Our next case is, I don't know whether it's A-T-O-S or A-T-O-S, Process Allstate Insurance, 2023-1619 and 1620. Mr. Yulikowsky. Thank you, Your Honors. May I proceed? Yes, please. May it please the Court. We respectfully disagree with the Board's decision for three reasons. First, the Board erred in its construction of the claim limitation operation indicator. The Board adopted Allstate's construction, a sensor measurement determined from signals from the environment. That construction conflicts with the plain text of the claim construed in light of the specification. So to begin with the claim language, there's two indications in the language of the claim that the Board's construction is too broad. First, the claim drafter used the term operation indicator. However, under Allstate's construction, any measurement at all, any sensor determination would be considered an operation indicator. So if you had a thermometer that measured the temperature, that would be an operation indicator. Or if you had an accelerometer that measured acceleration, that would be as well. And I think that if that was the intent of the claim drafter, the claim drafter would have used a more straightforward term like measurement or signal or something like that. And the fact that the claim drafter used the very specific term operation indicator indicates that the claim drafter intended something narrower. And I think that analysis is bolstered by the use of the word created. It says that the operation indicator is created by the onboard component. And I don't think an ordinary English speaker would usually say something like the thermometer creates the temperature. I think it would say something like it detects the temperature. Does your construction of operation indicator require a conversion step? Yes, Your Honor. So I don't think it requires an additional step. It's the operation indicator as the product of the conversion. So we're not saying that it's a method step. It's just that claim term operation indicator is what you get after the conversion occurs. What's your best intrinsic support for that? So I think it's the specification that refers to a conversion pretty much every time it talks about or virtually every time it talks about an operation indicator. So if I can offer the Court an example, it says in Column 3, a vibration sensor may measure forces over time, i.e., the signals, and converts them into number of vibrations measured per second, operation indicators. What line number are you reading from? So it depends on which patent. I'm at Appendix 258. That's the 609. The line numbers are a little bit slightly different in the two patents. But in Appendix 258, you can see at Column 3, starting at line 56 or 57, it says a vibration sensor may measure forces over time, i.e., the signals, and convert them into number of vibrations measured per second, operation indicators. So I think in that discussion, the forces over time is in newtons. It's something that will be measured. It's a sensing device output. It's just a measurement. And then it says it will be converted into this different information, number of vibrations measured per second. And there's some expert testimony that interprets the specification and explains that an ordinary accelerometer can't produce vibrations measured per second. Instead, a significant amount of processing would have to occur. And so I think that's consistent with the claim construction that we've proposed. You can see a little bit further down. Now we're at Appendix 258, Column 3, line 63. It says an onboard sensor receives signals from the environment and converts them into operation indicators. Examples of signals from the environment include vibrations, acceleration, change in forces, noise. So again, I think that's a signal, so to speak, that the acceleration is the signal. It's detected. So that's in, say, meters per second squared. And then that's converted into the operation indicators. So for that reason, we respectfully request that the board's decision be vacated. The board's finding of anticipation was expressly predicated on the board's claim construction, which we believe was too broad. Unless the panel has further questions, I'm happy to turn to the next portion. What's the current status of the district court case that's been stated, right? That's correct. We requested a very long time ago, like a year and a half ago, for Rule 54B, partial judgment, to appeal the dismissal of the claims on 101 grounds. The district court has not yet ruled on that motion, so there's the separate order holding that there's a 101 issue, dismissing the claims because they're ineligible under 101. We do intend to appeal that immediately once we get the chance to do that. That hasn't been appealed? No, so we asked the district. Is it all the claims that have been found ineligible? Yes, so we couldn't appeal that right away because there's a trade secrets claim that's still going in the district court, so there's no final judgment. We asked the district court for a partial final judgment because we honestly want to appeal that at the same time as this, so it could all be before the court together. The district judge has not ruled on that motion. Do we know what the holdup is on the 54B judgment ruling? We do not know, Your Honor. Did opposing counsel oppose the interim judgment? I believe it was opposed. To my knowledge, we just don't know what the holdup is, but opposing counsel may correct me on that. Following up on Judge Wayne's question, my understanding is the dismissal on 101 grounds covers all the claims that are currently on appeal before us and more? I believe so. I'd have to check to make certain, but I believe that's the case, yes, Your Honor. But we, of course, will exercise a right to appeal that judgment at the earliest available opportunity. Can you address on the 1621 appeal the issue dealing with construction of vehicle-independent states? That's the next argument, Your Honor. I'm happy to address it now, but that's actually the next argument. Do you want to mix up the places? Yeah, I don't want to mix anybody up. Okay, I'm happy to answer the court's questions, obviously, about either. Just don't forget it. I won't forget it. Are you in the next appeal? Yes, I am. So I promise I will get there, Your Honor. Before we move on to, I sound like you want to move on to the change limitations, but I wanted to ask you a little bit more on this conversion point. I'm trying to get an understanding of where you're drawing the line in terms of what's needed with respect to conversion, so that's what's going to be leading to some of the questions I may pose. But if you were to plot immediately an output measurement over time, would that be something that you consider to be an operation indicator? I don't think so. It's a term of degree, so I don't think that the line between merely plotting and actually converting and deriving new information, it's not a very, very clear, solid line. That's a question of applying the converting term to the prior art. In this case, we believe that if our construction is adopted, we would prevail because the prior art doesn't disclose anything like conversion. It refers to an acceleration sensor for instantaneous detection of the motion state of an object by detecting dynamic forces. So we view that as a pure detection, no conversion. But exactly where detection, like how much processing of the information turns something into a conversion, I guess I just say that's a term of degree. That's for the finder of fact, depending on what the prior art discloses. So, you know, in a particular case, the prior art might disclose a very small change to the information, and I think that the fact finder would have to apply the claim interpretation conversion to the prior art and decide whether that rises to the level of a conversion. Okay, I'll turn to the next argument that we've raised. The next argument we've raised concerns the scope of the claim limitation based on a change. And there's two relevant claim limitations that are relevant here. So the action performed by the device has to be both based on the state and based on the change in state. And our basic position here is that those two requirements should be given independent meaning. Now, there's some dispute between the parties over whether this is really more of a claim scope question or more of a substantial evidence question. So we think we went either way, but we do think it is a claim scope question because our arguments are without reference to the prior art. They're really just looking at the claim itself. And I think that's a sign that it's more of a claim scope question. The question is whether the requirement that something be based on a change requires an awareness that a change has occurred, which requires an awareness that the past is different from the present. With respect to the change limitations, do you contend that the patents rise and fall together? In other words, if we find against you for the 140 patent, do we have to find against you for the 609 patent? So we've made the same arguments with respect to both. The 609 does refer to a previous change, whereas the 140 refers to a change. We view that as a clarifying change rather than a substantive change on what it means. Obviously, if the court concludes that those are meaningfully different and construes previous change or believe previous change favors us, we would certainly take that. So it sounds like you argued them to essentially rise and fall together. Yeah, that's how we've argued the case. We haven't argued that previous change means like the change before. I will agree that in the 609, the language is slightly stronger in our favor. So if the court concludes that the scope of that claim favors us and reaches a contrary conclusion on the other patent, then obviously we would accept that outcome. Could you speak up? I think some of the people in the courtroom are having trouble hearing. I'm sorry. I will speak up. I apologize, Your Honor. So the fundamental distinction between the parties, I think, is whether an action can be based on a change if there's no awareness of a change. So the example we've given in the brief, which also appears in the specification, is suppose you have a device that has volume six when the car is off and then goes up to volume seven when the car is on. So that's unquestionably an action that's based on the current state. We don't view that as based on a change in state. It does coincide with the change. In other words, you turn the car on and then your phone does something different. But the phone is always just checking the current state and acting based on that. It doesn't know that a change has occurred, and so that is not enough to satisfy both limitations simultaneously. To get to the based on a change limitation, the device has to know that a change has occurred and use the fact of the change as the basis for the action. So the specification gives what I think is a good example of that. If you turn your car off, then it will record the location of the car, but it won't keep doing that while the car is off. It's the fact of the change that causes the location to be recorded once. And your viewpoint, is a previous state always a previous change? Is a previous state always a previous change? Yes. Yes, I think a previous change we just think requires a distinction between a prior state and the current state. That's what we think is enough to satisfy a previous change. So my time is expiring, so I'll just say one word on the third issue that we've raised to the court today. That has to do with the claim limitation directing, or more broadly directing the individual upon his request using the portable device to the at least one geographic position. So the board expressly said that it viewed this as a question of what directing means. It framed it as a claim construction issue. And the question was whether directing means giving directions. The board concluded that directing was broader than giving directions, and we think that's an incorrect claim construction. I think in ordinary English, directing means giving directions. Directing and directions are cognates of each other, so I think that we're really applying the plain language of the claim here. And I think the specification also boosters that interpretation. Whenever it uses the word direct in some larger word, it always says directions. It actually contrasts the giving of directions to the recording of the location. There's this language. Counsel, I want to give directions that you're well into rebuttal time. You can continue or save it. I appreciate the court's direction, and I'll save the rest of my time unless there are further questions from the panel. Mr. Love. Thank you, Your Honor. May it please the court, Nathaniel Love for Allstate. I'll start, as counsel did, with operation indicator. First, this additional step that ATOS is proposing is information derived by converting sensing device output. And the real question is converting what? What the patent talks about, when the patent uses the word convert, is converting the signals from the environment into an operation indicator. And that concept of taking the signals and producing an output is captured by the board's construction, a sensor measurement determined from signals from the environment. So in the construction the board adopted, which is correct and should be affirmed, determined is a verb that is serving the same function as that kind of converting. But converting in your proposed construction is converting something different. It is converting what they refer to as sensing device output. And if you read their papers, this entire argument hinges on the idea that a sensing device is some sort of internal component of a sensor, and what's going on inside a sensor is there's a sensing device, and then there's additional processing that does more of an operation on the sensing device to produce what is ultimately the output of the sensor. So none of what I just said is described in the patent, and their construction relies entirely on that unspoken idea of what the internal components of a sensor are. But what we do know from the patent is that that's wrong, because the patent equates sensing device and sensor. Counsel read to you from the bottom of column three of the patent an example of a vibrational sensing device as an accelerometer. That passage falls just after the sentence that counsel read about a vibration sensor measuring forces over time and converting them into vibrations measured per second, operation indicators, and right after that the patent says an example of a vibrational sensing device is an accelerometer. So an accelerometer is a sensing device. So the question is, is an accelerometer a sensor? And the answer is yes, and we know that because the patent tells us that. On the previous page, column two, it's appendix 237, I believe that's the 140 patent, to lines 34 to 38 in a discussion of how accelerometers would be used to determine operational state in this patent. There's the clause, sensors like accelerometer. So an accelerometer is a sensor. An accelerometer is a sensing device. Sensor and sensing device mean the same thing in the patent. And so this distinction that they're trying to create, where there's further conversion of sensing device output internal to a sensor, that is just completely inconsistent with what the patent says. If you read the entirety of the patent and you look at the repeated references to what sensor is doing the work to determine the operational state of the vehicle, it's the accelerometer. And it says that again and again throughout the patent. The accelerometer is what's doing the work. The accelerometer is the sensor. So their construction hinges on this idea that sensing device and sensor are different, and the patent tells us they're the same thing. But even leaving that aside, suppose we embraced and considered this two-step notion, that a sensor is an internal sensing device plus the additional processing. The board's construction doesn't exclude a sensor that works like this. That sensor would still measure signals from the environment and produce an output. So we wouldn't have any problem that that concept is somehow outside of the board's construction. What ATOS needs is an additional requirement that only sensors that work in that way are within the scope of this claim. So that can't stand because, first of all, there's no support for it in the patent. The way they get this idea of a sensing device and then additional processing comes entirely from their expert testimony, which contradicts what the patent actually discloses, which is when the patent says sensing device, that's an accelerometer. It says a sensor is an accelerometer. They're the same thing. In your view, do sensors always do the conversion you described? So if you read the patent and how the patent describes sensors, and it describes them broadly, they measure signals from the environment and they produce something. They don't simply pass through the signals from the environment untouched. They act upon them and produce an output. And the patent describes those outputs as operation indicators. Figure one, for example, when you have an arrow coming in, the signals from the environment into the box that's the sensor, and what's output is operation indicators. So maybe you're anticipating my next question. What's your best intrinsic support for what we were just discussing? Is it figure one or other places you want to point me to? Certainly. So all the claim language says that our operation indicator is created by an on-board component. All the claims say that, except for claim 18 of the 140 patent, which is not challenged. And all the claims of the 609, except for claim 25 of the 609, which says at least one sensor generating at least one operation indicator. And then you go to the figures. The figure shows the sensor doing it. Figures two through four, it's a vibration sensor producing vibrations per second as the operation indicator. And the same passage that counsel read in column three of the patent toward the bottom describes sensors receiving the signals and converting them to operation indicators. The vibration sensor outputs the vibrations measured per second. So just consistently over time, the sensor collects information from the environment and it produces an output, which is an operation indicator. The last point I wanted to make on this, or maybe two points, counsel was discussing at the beginning a thermometer and this idea of just a mere measurement. How can a mere measurement be an operation indicator? Again, this passage we keep reading, it says on column three, number of vibrations measured per second is the operation indicator. So we're using the vibration sensor to make a measurement, and the patent tells us that measurement is an operation indicator. So a mere measurement can be an operation indicator. The last point on this is that there really is no meaningful distinction between the patent and the prior art on this point. The prior art, Kim, discloses using the same sensors, accelerometers, in the same mobile devices, smartphones, in the same way. A person carries them in a car, and that sensor in that smartphone can detect acceleration, which you can then use to determine the state of the vehicle, what the individual is doing in the vehicle. So Kim and the 148 and 609 patents are just entirely aligned on how they describe using these sensors to determine operations. Can you also update us on the issues we asked opposing counsel about with respect to the 101 challenge and the 54B judgment motion still pending and what the objection was? Yes. So I think one clarification is that case has not been stayed. The district court has that motion under advisement. It was opposed. Our position was basically the requirements of 54B, no just reason for delay, and so on. We're not satisfied in that reason. There were overlapping factual issues with the trade cedar claim and so on. So it was an opposed motion, and it does remain pending. The court's 101 decision did find all claims of these patents and also the patent in the next appeal, all of them were found to be ineligible under 101. So it covers all the claims that are at issue here. Do we have any sense on when the pending motion on the 54B judgment will be ruled on? We don't have an indication of that. We don't? We do not. So moving to change and previous change. I actually want to start on that distinction between change and previous change because some of the questions went to that. So we understood, both below and in the briefing, that Abrams's position was regardless of whether the word previous appears, the same reasoning applies. And that's actually a quote from their brief. So then I heard counsel just now make a suggestion that maybe if you think it's a little stronger for us than one of them, you could rule for us and we would like that. That has been forfeited. We have never had an opportunity to respond to whatever that argument might be, and certainly our position would be that's not an avenue that's available. They have given that up. These claims rise and fall together. This is a substantial evidence question. The board made factual findings that Kim discloses taking an action based in part on a previous change in operational state. That's what the claim requires, and the board's findings are dependent on 156 to 159. That's for the 609 patent. The corresponding pages in the 140 final decision are the same and cite the same evidence. That is supported by substantial evidence from Kim and by expert testimony. Kim discloses, and this is a quote, automatically provides a corresponding service according to changes in the service environment. That's at Appendix 1148. That's Claim 13 of Kim. Kim discusses that at Paragraph 26 of its specification. That's at Appendix 1150. So Kim is discussing detecting changes in the service environment. Appendix 1151, Paragraph 43 of Kim, talks about continuously detecting changes in the user's context. Kim is all about detecting changes. If you read the entirety of the patent, Kim is describing sequences of states. The person gets into a car. They drive. They get out of the car. They walk. They enter a building. At each of these changes in state, Kim may or may not make a corresponding change in services depending on what preferences and so on the individual has set. In addition to that, there's a specific example in Kim that matches exactly one of the changes that is in that large disjunctive clause in Claim 1 of each patent. That's at 1154 in the appendix, at Paragraph 78 of Kim, when the vehicle reaches the destination and it is detected that the engine is turned off and the noise has disappeared. Those are words of a transition that is describing a change, and that is specifically one of the changes, a condition from the engine being on to the engine being off, that is listed in the claim as one of the type of changes that you could detect in order to satisfy this claim. That's explicitly disclosed in Kim, along with taking an action in response to it. In addition to that substantial evidence support, the board found all states expert and particularly credited all states experts' testimony as more credible because it tracked these claim requirements. That's at Appendix 159, and it's citing to Appendix 2124 through 31. There's a long sequence of paragraphs from all states expert, Dr. Michelson, that the board credited as credible. So the claim construction issue that they're attempting to raise now is this idea that this claim should be understood to require something more about an awareness of the past. So first of all, what they present in their brief, if you look at the blue brief, how this issue is presented, it is on Page 1. This is Issue 2. Whether the PTAB erred in finding that a prior right reference disclosed the step of a device making a termination based on change, and the last clause here, when the device in the prior right reference was never aware that a change had occurred. That's their challenge here, is whether there was substantial evidence for the idea that the device in the prior right reference, Kim, was never aware that a change had occurred. And clearly, from all the passages we just read, Kim is absolutely aware of changes occurring. That's what Kim is all about. So the issue they presented is a substantial evidence question, and it fails because Kim explicitly discloses and is aware that a change has occurred. The additional requirement they're suggesting now of an awareness of the past, all the claim requires is sufficient awareness of the past to recognize that something has changed. You don't need to remember some sequence of states indefinitely into the past. You just need to know what the current state or the previous state was to recognize that a state has changed. And that's reflected in what Kim says in that specific example. The engine was on, but it has now been turned off. The noise that was present has now disappeared. So for those reasons, the board's findings are supported by substantial evidence on change and previous change, and it should be affirmed. I'll touch on directing the individual. So the specification does not describe giving directions in any way that distinguishes them from a disclosure like Baker. Baker was the patent application that was combined with Kim for the two claims that have this directing the individual limitation. Baker is a location system for locating a parked vehicle. It starts at Appendix 1163. It has a personal wireless device that incorporates this method. The entire purpose of Baker is to get the individual back to their car. That's what Baker is for. That's the problem that Baker is solving. And so it's not merely identifying a location or something like that. Baker gives you a map. It shows you where you are, and it shows you where the car is. It's like you stop at a gas station. You say, I'm lost. Where am I? How do I get to the city? The guy pulls out a map. He says, we're here. We're trying to get there. That's a way of directing the individual. What Baker discloses is sufficient. There was no explanation in the brief or from counsel as to what is different about the idea of giving directions, what additional requirement that imposes such that Baker's disclosure would be insufficient. In fact, what they wrote in the brief, in their reply brief on page 17, was they have never contended that directing requires providing or giving directions in any specific way. So it's unclear what this claim construction giving directions would add to directing the individual. They haven't identified any support in the specification for that, and they haven't explained how that's absent from what Baker's disclosure was. Am I directing someone within the meaning of the claims if I give them a globe with D.C. and Chicago highlighted? Would that be within the meaning of the claims in terms of directing? So I think it's not clear whether the individual's in D.C. at that point. It's not clear whether the globe has roads on it and things like that. I think that's maybe not sufficient. What Baker shows you on the screen of your device is a map showing your current location and the location of the parked car. I suppose it is possible that in the grand scheme of things, those distances could be very far apart. But what's shown to you on the screen is a map, and assuming you're able to traverse between those distances, you'd be able to find your car. But it doesn't show how to get to, let's say, your car. You have a map that shows where you're at and where your car is at, and that's it. That's true. That's Baker. That is what Baker shows. But that's not showing you how to get to your car. There may be more than one way of getting to the car. There are examples in the specification of ways you might suggest the location to the person that include GPS or a screen or voice prompts. And, in fact, one thing the specification does propose, and this is Appendix 239, Column 6. Is the word directing the individual, is directing a verb? I believe so, yes. So wouldn't that mean that it's a verb? It's requiring an individual to do something. I mean, here's the directions. I'm directing you to your car. Isn't that more than just simply say go that way? Well, it's more than go that way. It shows your current location, and it shows where the car is. So one way you could give someone directions, say we're here, and where you're trying to get to is there, and what you're pointing to there is a map. And that is a way of giving directions. Obviously, you could give someone more detailed directions, give them step-by-step, turn-by-turn directions, give them voice prompts. But even that doesn't require that. Well, if it just says your car is in the parking lot, is that directing the individual? So Baker certainly does more than that. That direction may be sufficient, depending on the circumstances. That's too broad. Telling someone your car is in the parking lot may be enough based on— But that could be directing. It could be, yes. Depending on the circumstances, it could be. The point I was just trying to make is that Column 6, Lines 31 to 32, the patent actually says perhaps present the individual with a map and let the user determine the point to return to. So this idea is totally consistent with the patent. Counsel, I'm afraid I have to direct you to your seat. Thank you. Mr. Unikowski has some rebuttal time. Thank you, Your Honors. Just a couple of points. First of all, my colleague from Allstate framed the operation indicator claim construction dispute as a question of whether an accelerometer is a type of sensor or sensing device. Just to remind the Court that accelerometer, sensor, sensing device, these are not the claim limitations that we're asking the Court to interpret. The question in this case is what does it mean to create an operation indicator. I don't think an ordinary speaker of English would say that an operation indicator refers to any measurement in the entire world. That's the starting premise that I think the Court should adopt before going into specification and trying to seek some guidance as to how you should construe an operation indicator in a manner that conforms to the text. And then I think when you see in the specification, there's a description of the measurement of forces and then the conversion into vibrations measured per second. That gives some guidance on why operation indicator is narrower than measurement. I'd like to say one word about the previous change versus change issue. So we certainly weren't proposing a change, so to speak, from the position in our brief. We think the two issues rise and fall together. I mean, we made separate arguments on both. We have an argument in our brief about the world's previous change, and then we say that the same arguments should apply to change. Of course, if the Court concludes that our first argument is more persuasive than the second argument, it's within the Court's discretion to rule with us on one and against us on the other. That's all I was saying. I wasn't trying to alter our argument in any way from what's in our brief. I also respect or disagree with the interpretation of Kim that was offered by all states' counsel. All it says is you turn off the car, it does one thing, and you turn on the car, it does something else. And so when you change the car from off to on, what the device does changes. That's just an action based on the current state. And when the state happens to change, the action changes as well. But I don't think the Court needs to reach the interpretation of the Kim reference. I think the Court should vacate on claim scope and allow the Board to address that on remand. And I'm happy to rest on our brief and our argument on directions unless there are further questions from the Court. Thank you. Both counsel, the case is submitted.